1  ADOLFO B. GARBER (CSB No. 117817)
   abgarber@sbcglobal.net
2  3580 Wilshire Blvd., Suite 1780
   Los Angeles, CA 90010
3  Telephone No. (213) 383-1131
   Fax No. (213) 383-1139
4
   Attorney for Defendant,
5  Edgar Velasquez

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 Daniel Lopez,                    )  Case No. 2:18-cv—06201-R (AFMx)
                                    )
12          Plaintiff,              )  **DEFENDANT'S APPENDIX IN SUPPORT
                                    )  OF MOTION FOR SUMMARY**
13     vs.                          )  **JUDGMENT/PARTIAL SUMMARY**
                                    )  **JUDGMENT**
14                                  )
                                    )  **Hearing Date: February 19, 2019**
15 Edgar Velasquez; and Does 1-10,  )  **Time: 10:00 a.m.**
                                    )  **Room: 880**
16                                  )  **Honorable MANUEL L. REAL**
          Defendants.               )
17                                  )
                                    )
18                                  )

19
   TO: PLAINTIFF, DANIEL LOPEZ, AND TO HIS ATTORNEYS OF RECORD:
20
           Defendant, Edgar Velasquez, submits the following Appendix with his Motion for
21
   Summary Judgment/Partial Summary Judgment and To Dismiss:  A compliance report
22
   (Exhibit "A") and a Supplemental Compliance Report (Exhibit "B"), each authored by
23
   and referred to in the Declaration of Gabriel Argueta, which he authenticates as made in
24
   the course and scope of his work as a CASp inspector. The copy of the Complaint is
25
   Exhibit "C", and a copy of the Answer is Exhibit 'D."
26

27

28
                          Page One (1)

                                         Defendant's Appendix

EXHIBIT A – A Compliance Report, dated December 18, 2018, from Gabriel Argueta

 CASp, consisting of three (3) pages;

EXHIBIT B -  A Supplemental Compliance Report, dated December 18 2018, from

 Gabriel Argueta, CASp, consisting of five ( 5) pages;

EXHIBIT C –. A Complaint filed on July 18, 2018  by Plaintiff, Daniel Lopez against

 Defendant, Edgar Velasquez.

EXHIBIT D -  . Answer to Complaint filed on September 26, 2018 by Defendant, Edgar

 Velasquez.

///

Dated: January 17, 2019

By    /s/   ADOLFO B. GARBER

ADOLFO B. GARBER, Attorney for

Defendant, EDGAR VELASQUEZ

3580 Wilshire Blvd., Suite 1780

Los Angeles, CA 90010

Tel. (213) 383-1131

Fax (213) 383-1139

Email: abgarber@sbcglobal.net

# G & A

## Gabriel Argueta CASp Services

### Consulting, Inspections and Designs

15533 Faysmith Ave.
Gardena, Ca. 90249-4439

Phone # 310-597-5398
CASp Certificate # 126

gab123arg@gmail.com

# DISABLED ACCESS INSPECTION REPORT



## THIS REPORT HAS BEEN PREPARED FOR:

**Aranda's Carwash at
349 E. Florence Ave.
Los Angeles, CA 90003**



## December 2018

*Gabriel Argueta*
## CASp Services

- It was noticed that the access aisle was marked by a blue borderline on its entire perimeter and hatched lines were painted a color contrasting with the existing parking surface which were measured and found to be placed at no more than 36 inches on center.
- It was observed that the surface of the access aisle was provided with a notice "No Parking", the words of the notice were painted in white and with letters at least 12 inches high.
- It was observed that the location of the accessible parking space did not require a disable person to wheel or walk behind any other parking space, it was noticed that the accessible parking space adjoined an accessible route of travel which was measured and found it to be at least 48 inches wide and with the surface not exceeding 1:20 slope in the direction of travel and with no more than 1:48 cross slope.
- It was observed that the accessible parking space was identified by the international symbol of accessibility with an area of at least 70 square inches and noticed that the signs were permanently posted immediately adjacent to and visible from the accessible parking space.
- It was observed that the accessible parking space was identified by and additional language as "Van Accessible".
- It was noticed that the accessible parking space was provided with an additional language stating "Minimum Fine $250" and was posted below the international symbol of accessibility.
- It was observed that the signs were posted at least 80 inches above the surface of the parking space.
- It was observed that an additional sign alerting motorists that vehicles parked on designated accessible parking spaces not displaying distinguishing placards or special license plates issued to persons with disabilities will be towed away at the owner's expense was provided, the sign was permanently posted immediately adjacent to and visible from the accessible parking space, it was noticed that the required information (address and telephone number of the tow company) was provided as permanent part of the sign. The sign was measured and found it to be at least 17 inches wide by 22 inches high.

After the inspection was completed, I concluded that the accessible parking space met the applicable standards for the requirements of California Title 24 and ADAS.

**Note:**

This report is good as long as the property keeps or stays in the same conditions as when the final inspection was conducted, (inspection date: 12/18/18). If the property is ever remodeled, reconditioned, altered or any improvement is conducted, and/or if any plumbing fixture, furniture, ADA signage, any equipment or fixture is ever moved, replaced, relocated, added, repositioned, repaired, removed or altered, it will be the total responsibility of the property owner or his/her agent to insure that all work, devices, fixtures, equipment, features, signage, furniture complies with all applicable standards of the California Title 24 and ADAS

The property/business owner must maintain the property to avoid a possible complaint, parking spaces shall be re-painted when they start fading, signs shall be replaced when they get graffiti, the surface of

2

EXHIBIT "A" Page 2 of 3

## *Gabriel Argueta*
### CASp Services

the parking spaces and their loading and unloading access aisle must be fixed/repaired when start sagging, cracking or if portions of the surface become uneven.

Gabriel Argueta CASp # 126






3

# G & A

## Gabriel Argueta CASp Services

### Consulting, Inspections and Designs

**15533 Faysmith Ave.**
**Gardena, Ca. 90249-4439**

**Phone # 310-597-5398**
**CASp Certificate # 126**

gab123arg@gmail.com

# DISABLED ACCESS INSPECTION REPORT



## THIS REPORT HAS BEEN PREPARED FOR:

**Aranda's Carwash at**
**349 E. Florence Ave.**
**Los Angeles, CA 90003**



## December 2018

"EXHIBIT "B" Page 1 of 5

# Gabriel Argueta
## CASp Services

**MEETS APPLICABLE STANDARDS.**

December 18, 2018
Edgar Velasquez
Aranda's Carwash

Re: ADA inspection of accessible
    Parking space located on
    349 East Florence Ave.
    Los Angeles, CA 90003

**Business Name:**        Aranda's Carwash
**Type of Business:**     Car Wash
**Customer Name:**        Edgar Velasquez (Business Owner)
**Property Year Built:**  1983
**List of Improvements:** None
**Type of Property:**     Private
**Type of Owner:**        Private
**Applicable Standards:** California 2016 Building Code and ADAS 2010
**Areas Inspected:**      Accessible parking space, height of the Coin changer Machine operable controls
                          and the washing bay operable controls.

Per your request, I visited the above reference facility on December 18, 2018 for the purpose of evaluating whether the accessible parking space located within the property meets the applicable standards for ADA requirements.

After visiting and inspecting the property the following conditions were noted:

Accessible parking area:

- One accessible parking space has been provided which is Van Accessible, which I inspected and evaluated for ADA compliance.
- The accessible parking space was measured and found to be at least 9-foot wide by at least 18-foot long and served by a loading and unloading access aisle placed on the passenger's side when the vehicle is going forward into the accessible parking space.
- The loading and unloading access aisle was measured and found it to be at least 8-foot wide by at least 18-foot long.
- The surface of the accessible parking space and the access aisle was measured and found to be with no more than 1:48 percent slope in any direction.
- It was observed that the surface of the accessible parking space was identified by the international symbol of accessibility which was measured and found to be at least 36 inches square, it was observed that the symbol of accessibility was painted in white on a blue background and was

1

## *Gabriel Argueta*

### CASp Services

placed centered within the accessible parking space and at the end of the stall adjacent to the vehicular aisle so that it was visible to an enforcement officer passing by.

- It was noticed that the access aisle was marked by a blue borderline on its entire perimeter and hatched lines were painted a color contrasting with the existing parking surface which were measured and found to be placed at no more than 36 inches on center.

- It was observed that the surface of the access aisle was provided with a notice "No Parking", the words of the notice were painted in white and with letters at least 12 inches high.

- It was observed that the location of the accessible parking space did not require a disable person to wheel or walk behind any other parking space, it was noticed that the accessible parking space adjoined an accessible route of travel which was measured and found it to be at least 48 inches wide and with the surface not exceeding 1:20 slope in the direction of travel and with no more than 1:48 cross slope.

- It was observed that the accessible parking space was identified by the international symbol of accessibility with an area of at least 70 square inches and noticed that the signs were permanently posted immediately adjacent to and visible from the accessible parking space.

- It was observed that the accessible parking space was identified by and additional language as "Van Accessible".

- It was noticed that the accessible parking space was provided with an additional language stating "Minimum Fine $250" and was posted below the international symbol of accessibility.

- It was observed that the signs were posted at least 80 inches above the surface of the parking space.

- It was observed that an additional sign alerting motorists that vehicles parked on designated accessible parking spaces not displaying distinguishing placards or special license plates issued to persons with disabilities will be towed away at the owner's expense was provided, the sign was permanently posted immediately adjacent to and visible from the accessible parking space, it was noticed that the required information (address and telephone number of the tow company) was provided as permanent part of the sign. The sign was measured and found it to be at least 17 inches wide by 22 inches high.

<u>Height of the Coin changer machine and Washing bay operable controls</u>

- The height of the operable controls for the coin changer machine and the washing bay operable controls were inspected and evaluated for ADA compliance, this inspection was only for the height of the operable controls.

- At the time of the inspection was observed that the highest operable controls including coin slots of both machines were located at no more than 48 inches above the floor.

After the inspection was completed, I concluded that the accessible parking space and the height of the operable controls met the applicable standards for the requirements of California Title 24 and ADAS.

**<u>Note:</u>**

This report is good as long as the property keeps or stays in the same conditions as when the final inspection was conducted, (inspection date: 12/18/18). If the property is ever remodeled, reconditioned,

## *Gabriel Argueta*
### **CASp Services**

altered or any improvement is conducted, and/or if any plumbing fixture, furniture, ADA signage, any equipment or fixture is ever moved, replaced, relocated, added, repositioned, repaired, removed or altered, it will be the total responsibility of the property owner or his/her agent to insure that all work, devices, fixtures, equipment, features, signage, furniture complies with all applicable standards of the California Title 24 and ADAS

The property/business owner must maintain the property to avoid a possible complaint, parking spaces shall be re-painted when they start fading, signs shall be replaced when they get graffiti, the surface of the parking spaces and their loading and unloading access aisle must be fixed/repaired when start sagging, cracking or if portions of the surface become uneven.

Gabriel Argueta CASp # 126

 



3

*Gabriel Argueta*

## CASp Services

 



EXHIBIT "B" 5 of 5

CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Daniel Lopez**, | Case No. |
| Plaintiff, | |
| | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| v. | |
| **Edgar Velasquez**; and Does 1-10, | |
| Defendants. | |

Plaintiff Daniel Lopez complains of Defendants Edgar Velasquez; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility.

2. Defendant Edgar Velasquez owned the real property located at or about 349 E. Florence Avenue, Los Angeles, California, in February 2018.

3. Defendant Edgar Velasquez owns the real property located at or about 349 E. Florence Avenue, Los Angeles, California, currently.

4. Defendant Edgar Velasquez owned the Aranda's Car Wash located at or

about 349 E. Florence Avenue, Los Angeles, California, in February 2018.

5.   Defendant Edgar Velasquez owns the Aranda's Car Wash ("Car Wash") located at or about 349 E. Florence Avenue, Los Angeles, California, currently.

6.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Car Wash in February 2018 to wash his van.

Complaint

11. The Car Wash is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of the Car Wash.

13. Unfortunately, none of the parking spaces that served the Car Wash were marked and reserved for persons with disabilities.

14. On information and belief, plaintiff alleges that there used to be an accessible parking space that served the Car Wash. Unfortunately, the defendants have allowed the parking space previously reserved for persons with disabilities to fade away or get paved over.

15. Meanwhile, the only possible parking space that was marked and reserved for persons with disabilities in the vicinity was located next door at the laundromat. There was a sign on the wall, however, that said parking spaces were only available for laundromat customers. As a result, plaintiff could not avail himself of that parking space.

16. Still, even if the plaintiff wanted to use the parking next door, the parking space marked and reserved for persons with disabilities had slopes that exceeded that allowed by law. The van parking space marked and reserved for persons with disabilities next door had slopes greater than 2.1%.

17. Currently, there are no accessible parking spaces serving the Car Wash.

18. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

19. Plaintiff personally encountered these barriers.

20. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

21. Meanwhile, and even though plaintiff did not personally confront the barriers, the coin slots for the Car Wash are located too high for wheelchair to

EXHIBIT "C" Pg. 3 of 8

3

Complaint

use. In fact, the highest operable part is about 65 inches in height.

22. Plaintiff plans to return and patronize the Car Wash but is deterred from visiting until the defendants remove the barriers.

23. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

24. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

25. For example, there are numerous paint/stripe companies that will stripe a parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full compliance with federal and state access standards.

26. Plaintiff is deterred from returning and patronizing the Car Wash because of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Car Wash as a customer once the barriers are removed.

27. Given the obvious and blatant nature of the violations and barriers alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his

4          EXHIBIT "C" Pg. 4 of 8

Complaint

1   disability removed regardless of whether he personally encountered them).

2

3   **I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS**
4   **WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all
5   Defendants.) (42 U.S.C. section 12101, et seq.)

6       28. Plaintiff re-pleads and incorporates by reference, as if fully set forth
7   again herein, the allegations contained in all prior paragraphs of this
8   complaint.

9       29. Under the ADA, it is an act of discrimination to fail to ensure that the
10  privileges, advantages, accommodations, facilities, goods and services of any
11  place of public accommodation is offered on a full and equal basis by anyone
12  who owns, leases, or operates a place of public accommodation. See 42 U.S.C.
13  § 12182(a). Discrimination is defined, inter alia, as follows:

14          a. A failure to make reasonable modifications in policies, practices,
15             or procedures, when such modifications are necessary to afford
16             goods, services, facilities, privileges, advantages, or
17             accommodations to individuals with disabilities, unless the
18             accommodation would work a fundamental alteration of those
19             services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

20          b. A failure to remove architectural barriers where such removal is
21             readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are
22             defined by reference to the ADAAG, found at 28 C.F.R., Part 36,
23             Appendix "D."

24          c. A failure to make alterations in such a manner that, to the
25             maximum extent feasible, the altered portions of the facility are
26             readily accessible to and usable by individuals with disabilities,
27             including individuals who use wheelchairs or to ensure that, to the
28             maximum extent feasible, the path of travel to the altered area and

5

the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

30. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, i.e., having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

31. Here, the lack of an accessible parking space is a violation of the law.

32. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

33. Assuming that plaintiff could use the parking reserved for laundromat customers, the failure to provide level parking is a violation of the law.

34. Under the ADA, the highest operable part of controls, dispensers, receptacles and other operable equipment must be placed so that it is no higher than 48 inches above the ground if only a forward approach is provided or 54 inches if a parallel approach is possible. 1991 Standards § 4.27.3, 4.25, 4.26; 2010 Standards 205; 308, 309.

35. Here, the failure to ensure that these height/reach requirements are met

1  is a violation of the law.

2    36. A public accommodation **must** maintain in operable working condition

3  those features of its facilities **and equi**pment that are required to be readily

4  accessible to and usable by person**s with** disabilities. 28 C.F.R. § 36.211(a).

5    37. Here, the failure to ensure **that** the accessible facilities were available

6  and ready to be used by the plain**tiff is** a violation of the law.

7    38. Given its location and op**tions**, plaintiff will continue to desire to

8  patronize the Car Wash but he ha**s been** and will continue to be discriminated

9  against due to the lack of accessible facilities and, therefore, seeks injunctive

10  relief to remove the barriers.

11

12  **II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL**

13  **RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ.

14  Code § 51-53.)

15    39. Plaintiff repleads and incorporates by reference, as if fully set forth

16  again herein, the allegations contained in all prior paragraphs of this

17  complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,

18  that persons with disabilities are entitled to full and equal accommodations,

19  advantages, facilities, privileges, or services in all business establishment of

20  every kind whatsoever within the jurisdiction of the State of California. Cal.

21  Civ. Code § 51(b).

22    40. The Unruh Act provides that a violation of the ADA is a violation of the

23  Unruh Act. Cal. Civ. Code, § 51(f).

24    41. Defendants' acts and omissions, as herein alleged, have violated the

25  Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's

26  rights to full and equal use of the accommodations, advantages, facilities,

27  privileges, or services offered.

28    42. Because the violation of the Unruh Civil Rights Act resulted in difficulty,

EXHIBIT "C" Pg. 7 of 8

Complaint

1    discomfort or embarrassment for the plaintiff, the defendants are also each

2    responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-

3    (c).)

4

5    **PRAYER:**

6    Wherefore, Plaintiff prays that this Court award damages and provide

7    relief as follows:

8    1. For injunctive relief, compelling Defendants to comply with the

9    Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

10    plaintiff is not invoking section 55 of the California Civil Code and is not

11    seeking injunctive relief under the Disabled Persons Act at all.

12    2. Damages under the Unruh Civil Rights Act, which provides for actual

13    damages and a statutory minimum of $4,000.

14    3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant

15    to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

16

17    Dated: July 17, 2018        CENTER FOR DISABILITY ACCESS

18

19

20                     By:

21

22                       Chris Carson, Esq.
                          Attorney for plaintiff

23

24

25

26

27

28

EXHIBIT "C" Pg. 8 of 8

Complaint

ADOLFO B. GARBER (CSB No. 117817)
3580 Wilshire Blvd., Suite 1780
Los Angeles, CA 90010
Telephone No. (213) 383-1131
Fax No. (213) 383-1139
abgarber@sbcglobal.net

Attorney for Defendant,
Edgar Velasquez, an individual
and doing business as Aranda's
Car Wash

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daniel Lopez, | Case No. 2:18-cv-06201-R (AFMx) |
| Plaintiff, | **ANSWER OF DEFENDANT, EDGAR VELASQUEZ, AN INDIVIDUAL AND DOING BUSINESS AS ARANDA'S CAR WASH, TO COMPLAINT; AND DEMAND FOR JURY TRIAL** |
| vs. | |
| Edgar Velasquez; and Does 1- 10, | |
| Defendants. | |

Defendant, Edgar Velasquez, an individual, and doing business as

Aranda's Car Wash (hereinafter referred to as "responding defendant") for

himself only, answers the Complaint of Plaintiff, Daniel Lopez (hereinafter

referred to as "plaintiff'), as follows:

- 1 -

EXHIBIT "D" Pg. 1 of 10

## ADMISSIONS AND DENIALS

1. This "responding defendant" cannot admit or deny the allegations in Paragraph 1 as he has no knowledge at all as to the alleged disability status of the plaintiff, if any, and on that basis, denies all the allegations therein.

2. This "responding defendant" admits the allegations in Paragraph 2

3. This "responding defendant" admits the allegations in Paragraph 3.

4. This "responding defendant" admits that he owns Aranda's Car Wash (hereinafter referred to as "Car Wash") located at 349 E. Florence Avenue, Los Angeles, California in February 2018.

5. This "responding defendant" admits that he "currently" owns the "Car Wash"

6. This "responding defendant" specifically denies "a joint venture" and/or "common enterprise" with any other defendants, named or unnamed, regarding the allegations in Paragraph 6. No averment is required to all other allegations in the stated paragraph.

7. This "responding defendant" does not dispute that this Court has subject matter jurisdiction over the Americans with Disabilities Act of 1990 (42 U.S.C. sections 12101 et seq).

EXHIBIT "D" Pg. 2 of 10

- 2 — ANSWER OF DEFENDANT, Edgar Velasquez

8. This "responding defendant" does not dispute that the Court can exercise its supplemental jurisdiction over a State claim pursuant to 28 U.S.C. section 1367(a).

9. Venue is not disputed by this "responding defendant" pursuant to 28 U.S.C. section 1391(b) (2).

10. This "responding defendant" lacks sufficient information or belief as to whether the plaintiff allegedly "went" to the "Car Wash" in "February 2018 to wash his van" or ever "went", and based on such lack of information or belief, denies all allegations in Paragraph 10.

11. This "responding defendant" admits all allegations in Paragraph 11.

12. This "responding defendant" admits all allegations in Paragraph 12

13. This "responding defendant" admits that he did not have a clearly designated handicap parking stall in "February 2018" only.

14. This "responding defendant" denies the allegations in Paragraph 15.

15. This "responding defendant" admits that it shares a common parking lot entrance with a Laundromat next door to the "Car Wash," which provides handicap accessible parking, and customers using the the Laundromat's handicap accessible parking are not precluded from gaining access to the "Car Wash" despite any signage to the contrary.

EXHIBIT "D" Pg 3 of 10

- 3 -  ANSWER OF DEFENDANT, Edgar Velasquez

16. Based on lack of information or belief, this "responding defendant" denies all allegations in Paragraph 16.

17. This "responding defendant" admits that on "February 2018," there was no clearly designated handicap accessible parking.

18. This "responding defendant" denies all allegations in Paragraph 18.

19. This "responding defendant" lacks information or belief as to whether the plaintiff allegedly "personally encountered" the claimed barriers, and based on such lack of information or belief, this "responding defendant" denies all allegations in Paragraph 19.

20. This "responding defendant" denies all allegations in Paragraph 20.

21. This "responding defendant" denies all allegations in Paragraph 21.

22. This "responding defendant" lacks information or belief as to the plaintiff's alleged "plans", and based on such lack of information or belief, this "responding defendant" denies all allegations in Paragraph 22.

23. This "responding defendant" denies all allegations in Paragraph 23.

24. This "responding defendant" admits that the barriers claimed in the Complaint are readily achievable, but denies that a ground modification of the slope is readily achievable.

25. This "responding defendant" affirmatively avers that no response is

EXHIBIT "D" Pg/ 4 of 10

-4 – ANSWER OF DEFENDANT, Edgar Velasquez

1   required to the allegations in Paragraph 25.

2

3   26. This "responding defendant" denies all allegations in Paragraph 26.

4   27. This "responding defendant" denies all allegations in Paragraph 27.

5
## RESPONSE TO FIRST CAUSE OF ACTION (ADA CLAIM)

6   28.  No averment is required as to the allegations in Paragraph 28.

7   29.  No averment is required as to the allegations in Paragraph 29.

8   30.  No averment is required as to the allegations in Paragraph 30.

9   31. This "responding defendant" denies all allegations in Paragraph 31.

10  32. No averment is required as to the allegations in Paragraph 32.

11  33. This "responding defendant" denies all allegations in Paragraph 33.

12  34. This "responding defendant" affirmatively avers that no response is

13      required to Paragraph 34.

14
15  35. This "responding defendant" denies all allegations in Paragraph 35.

16
17  36. No averment is required as to the allegations in Paragraph 36.

18  37. This "responding defendant" denies all allegations in Paragraph 37.

19
20  38. This "responding defendant" lacks information or belief as to the

21      plaintiff's alleged "desire to patronize the 'Car Wash,'" and based on

22      such lack of information and belief, this "responding defendant" denies

23
24      all allegations in Paragraph 38.

25  ## RESPONSE TO SECOND CAUSE OF ACTION (UNRUH CIVIL

26  ## RIGHTS CLAIM)

27
28  39. No averment is required to the allegations in Paragraph 39.

40. No averment is required to the allegations in Paragraph 40.

41. This "responding defendant" denies all allegations in Paragraph 41.

42. This "responding defendant" denies allegations in Paragraph 42.

## RESPONSE TO THE PRAYER

1. through 3., Inclusive. These "responding defendant" denies all requests for relief in the prayer.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense (Failure to State a Cause of Action)

As a First and separate Affirmative Defense, this "responding defendants" alleges that the complaint, and each cause of action therein, fails to state facts sufficient to constitute a cause of action against this "responding defendant," in that, among other things, the plaintiff claims that he(sic) "went" on an unknown day "in February 2018" to the "Car Wash" (see Complaint, at p. 2, line 28), and he also fails to allege whether he actually entered the parking lot of the "Car Wash" and thus he could not have "personally encountered" any alleged barriers, and thus fails to state a claim under FRCP 12(b)(6). See also Cal Civ. Code section 55.56(b) which requires that the plaintiff "personally encountered" the alleged violation for a State claim.

### Second Affirmative Defense (Lack of Standing)

For a Second and separate Affirmative Defense, this "responding defendant" alleges that the plaintiff has no standing (FRCP 12(b)(1)), in that, among other things, he never "visited" the subject premises, and is not known by the defendant or its employees, and further, the plaintiff lacks a

- 6 -  **ANSWER OF DEFENDANT, Edgar Velasquez**

genuine "intent to return" to the defendant's "Car Wash" and/or he has not been deterred from returning to the stated premises. The plaintiff has not suffered an injury-in-fact that is concrete *and* particularized to satisfy Article III standing. (*Spokeo, Inv. v. Robins*, 136 S. Ct., 1540, 1543 (2016).

### Third Affirmative Defense (Statute of Limitation)

For a Third and separate Affirmative Defense, this "responding defendant" alleges that the complaint is time barred pursuant to, among other laws, 28 U.S.C. Section 1658(a) as well as Cal. Code of Civil Procedure sections 335.1, 337, 338, 339 and 340.

### Fourth Affirmative Defense (Uncertainty of Allegations)

For a Fourth and separate Affirmative Defense, this "responding defendant" alleges that the complaint, and each of its two (2) purported Causes of Action, is so uncertain and vague, in that, among other things, the plaintiff fails to allege whether he was at all "injured in fact" and how his alleged physical disability, specifically prevented him from gaining access as to each alleged barrier.

### Fifth Affirmative  Defense (Unclean Hands)

For a Fifth and separate Affirmative Defense, this "responding defendant" is informed and believe and thereon alleges, that the plaintiff never "visited" the defendant's premises, and thus the plaintiff never "personally encountered" any of the accessibility barrier(s) at the defendant's premises.   This "responding defendant" is further informed, believes and thereon alleges, that the plaintiff is a serial litigant and thus has unclean hands.

### Sixth Affirmative Defense (Failure to Mitigate)

For a Sixth and separate Affirmative Defense, this "responding defendant" alleges that the plaintiff failed to mitigate his alleged damages, in that, among other things, he never requested assistance from  the

EXHIBIT "D" Pg. 7 of 10

- 7 -   ANSWER OF DEFENDANT, Edgar Velasquez

1  defendant or persons employed by the defendant, and that failure to

2  mitigate, bars and/or diminishes plaintiff's recovery, if any, against this

3  "responding defendant."

### Seventh Affirmative Defense (Comparative Fault)

5  For a Seventh and separate Affirmative Defense, this "responding

6  defendant" is informed and believes, and thereon alleges, that to the extent

7  that any damage sustained by the plaintiff was proximately caused by the

8  plaintiff or any other person's failure to mitigate damages by failing to

9  exercise reasonable care in preventing such damage, the plaintiff is barred

10  from recovering such damages as to this "responding defendant."

### Eighth Affirmative Defense  (Alleged Acts Were Not Intentional)

12  For a Eighth and separate Affirmative Defense, this "responding

13  defendant" alleges that the alleged discriminatory actions claimed by the

14  plaintiff were not intentional.  As a result, the plaintiff is not entitled to the

15  relief requested in the complaint.

### Ninth Affirmative Defense ("Statutory Damages" Limited To "Particular A Visit," Not The Number of  Construction Accessibility Barrier Violations—California Civil Code section 55.56 (f))

19  For a Ninth and separate Affirmative Defense, any "statutory

20  damages" under the Unruh Civil Rights Act (California Civil Code sections

21  51(f) et seq.) are limited to the "particular visit" claimed by the plaintiff to the

22  defendant's' premises, and not upon the number of violations of

23  construction-related accessibility standards identified at the place of public

24  accommodation where the denial of full and equal access allegedly

25  occurred.

### Tenth Eleventh Affirmative Defense ("Technical Violations" Are Presumed Not To Cause A Person Difficulty, Discomfort, or Embarrassment for  Purposes of California Unruh Statutory

- 8 -   ANSWER OF DEFENDANT, Edgar Velasquez

**Damages- Cal Civ. Code Section 55.56(e)(1)**

For an Tenth and separate Affirmative Defense, this "responding defendant" alleges that there is no liability under the Cal. Unruh Act for "technical violations," including but not limited to, faded signs, "interior signs... that identify the location of accessible elements...when <u>not</u> all such elements, facilities, or features are accessible." (Cal. Civ. Code section 55.56(e)(1)(A)). (Emphasis added).

**Eleventh Affirmative Defense (No Liability Under Cal. Unruh Act for Construction Barriers Removed Within 120 Days of Inspection Report of Certified Access Specialist—Cal Civ. Code section 55.56 (g)(3)(A)(i)-(iv))**

For a Eleventh and separate Affirmative Defense, this "responding defendant" alleges that there is no liability under the Cal. Unruh Act, where "notwithstanding any other law," the defendant has "corrected within 120 days of the date of the inspection (by the certified access specialist), all construction relations violations in the structure or area inspected by the CASp (certified access specialist) that are noted in the CASp report that are the basis of the claim."

**Twelfth Affirmative Defense ("Small Business" Reduction of "Statutory Damages" To Minimum of $1,000.00 – Cal. Civil Code Section 55.56(g)(1))**

For a Twelfth and separate Affirmative Defense, this "responding defendant" alleges that it is a "small business" (i.e., with less than twenty-five (25) employees and having gross receipt of less than three million five hundred thousand dollars ($3,500.000.00) over the previous three (3) years as defined by Cal Civ. Code section 55.56(g)(2)(B)), and any accessibility barrier that is corrected within 60 days of being served with the complaint, limits the recovery of the plaintiff to one thousand

dollars ($1,000.00) for each alleged offense.

## Thirteenth Affirmative Defense (Reservation of Additional Affirmative Defenses)

It should be noted that this "responding defendant" has only started his investigation, and at this stage of the proceedings without the benefit of pre-litigation discovery, it is impossible for this defendant to assert all applicable affirmative defenses at this time, and thus this "responding defendant" reserves the right to assert additional affirmative defenses in the event that discovery or investigation indicates it would be appropriate.

WHEREFORE, this "responding defendant" prays for judgment as follows:

(1) That the plaintiff take nothing by his complaint on file;

(2) That the plaintiff be denied attorney's fees pursuant to *Buckhannon Bd. & CareHome, Inc. v. W. Virginia Dept's of Health & Human Res.*, 532 U.S. 598, 605-06 (2001);

(3) That the defendant be awarded attorney's fees pursuant to Cal. Civ. Code section 55; and *Jankey v. Lee*, 55 CA 4th 1035 (2012).

(4) That judgment be entered against the plaintiff and in favor of this "responding defendant;"

(5) For costs incurred herein; and

(6) For such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant, Edgar Velasquez, an individual, and doing business as Aranda's Car Wash, demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all matters triable by a jury.

Date: September 25, 2018

/s/ ADOLFO B. GARBER

ADOLFO B. GARBER,

Attorney for Defendant, Edgar Velasquez